UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK WINGSTER,<br><br>　　*Plaintiff*,<br><br>　　v.<br><br>DANIEL CYR, CONNECTICUT INTERLOCAL RISK MANAGEMENT AGENCY, LIBERTY MUTUAL INSURANCE COMPANY, CITY OF TORRINGTON,<br><br>　　*Defendants*. | No. 3:24-cv-01981-MPS |

**RULING ON MOTIONS TO DISMISS**

　　The plaintiff, Mark Wingster, brings this action against Daniel Cyr, Connecticut Interlocal Risk Management Agency ("CIRMA"), Liberty Mutual Insurance Company ("Liberty"), and the City of Torrington ("the City"), alleging claims for Bad Faith Denial of Insurance Claim, Breach of Covenant of Good Faith and Fair Dealing, vexatious litigation under Connecticut General Statutes § 52-568, and municipal liability under Connecticut General Statutes § 7-465.  The case arises from an underlying action in this District in which the Court entered a judgment against Cyr and in favor of Wingster (the "Underlying Action" or "UA").  *Wingster v. Lyons*, No. 3:20-CV-1087 (AWT), ECF No. 205 (Sept. 6, 2024).  Wingster now seeks to hold the Defendants liable for that judgment.  Liberty, CIRMA, and the City have each moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  ECF Nos. 27, 35, 48.  For the following reasons, I grant the motions but permit Wingster to amend his complaint to add a new claim.

I.　　**FACTUAL AND PROCEDURAL HISTORY**

　　The following facts, which I accept as true for purposes of this ruling, are drawn from the Third Amended Complaint and exhibits, ECF No. 25, as well as filings in the Underlying Action,

1

of which I take judicial notice.[1]

On July 30, 2020, Wingster filed a complaint in the Underlying Action, alleging civil rights violations for excessive force against Cyr, a police officer with the Torrington Police Department, under 42 U.S.C. § 1983. *Id.* ¶¶ 9–10. Following a trial, a jury entered a verdict in favor of Wingster on August 8, 2024. UA Dkt. No. 199. The following week, the court issued a finding that "the preponderance of the evidence shows that defendant Cyr was acting under color of state law at the time he committed acts the plaintiff highlighted for the jury in terms of the use of excessive force." ECF No. 25 ¶ 11; *Wingster v. Lyons*, No. 3:20-CV-1087(AWT), 2024 WL 3791179, at *2 (D. Conn. Aug. 13, 2024). On September 6, 2024, the court entered a judgment against Cyr for $132,175. ECF No. 25 ¶ 12; UA Dkt. No. 205. Wingster alleges that "all defendants have failed and refused to pay" the judgment. ECF No. 25 ¶¶ 15, 17. Wingster filed this action on December 14, 2024, seeking to hold the Defendants liable for the judgment. ECF No. 1.

At all times relevant to the complaint, the City employed Wingster in the Torrington Police Department. ECF No. 25 ¶ 10. CIRMA insured the Torrington Police Department and its officers. *Id.* ¶ 13. Liberty was the insurer for Cyr's homeowner's policy. *Id.* ¶ 14. After Wingster amended his complaint three times, Liberty, CIRMA, and the City each moved to dismiss, and Cyr filed an answer. ECF Nos. 27, 35, 48, 71.

Wingster alleges that CIRMA, Liberty, and Cyr each denied an insurance claim in bad faith and breached the covenant of good faith and fair dealing. ECF No. 25 at 4–8. He also alleges that the City violated Connecticut General Statutes § 7-465 by failing to indemnify its employee, *id.* at 8–9, and he alleges a vexatious litigation claim under Connecticut General Statutes § 52-568

---

[1] *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (citing *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157 (1969)) ("[W]e may properly take judicial notice of the record in that [separate] litigation between the same parties who are now before us.").

against CIRMA, Liberty, and the City for "assert[ing] a defense to Plaintiff's civil action for damages . . . without probable cause," either with or without malicious intent.[2]

## II. LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

## III. DISCUSSION

### A. Bad Faith Denial and Breach of Good Faith and Fair Dealing

Wingster's claims for bad faith denial of an insurance claim and breach of the covenant of good faith and fair dealing against CIRMA and Liberty all fail because Wingster does not allege that a contract exists between him and either insurer. "Connecticut courts repeatedly have held that 'the existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.'" *Carford v. Empire Fire & Marine Ins. Co.*, 94 Conn.

---

[2] The complaint notes that Wingster brings the Section 52-568 claims "[a]gainst CIRMA, Liberty[,] and Torrington," but then only alleges that the "[d]efendant insurers" asserted such a defense. ECF No. 25 at 8. Construing the complaint in the way most favorable to the plaintiff, as I must on a motion to dismiss, I assume that the term "[d]efendant insurers" includes the City.

3

App. 41, 45–46 (2006) (quoting *Macomber v. Travelers Property & Cas. Corp.*, 261 Conn. 620, 638 (2002)). The Connecticut Supreme Court "has tended to use the terms 'bad faith,' 'lack of good faith' and 'breach of the covenant of good faith and fair dealing' interchangeably . . . and [it] applies the same analysis to claims brought under each of these terms." *Capstone Bldg. Corp. v. American Motorists Ins. Co.*, 308 Conn. 760, 794 n.34 (2013); *see also Arch Ins. Co. v. Centerplan Constr. Co., LLC*, No. 3:16-CV-01891 (VLB), 2018 WL 6519063, at *17 (D. Conn. Dec. 11, 2018) (finding claims for surety bad faith and breach of the covenant of good faith and fair dealing were duplicative where both claims were based on the same contract disputes and the parties did not provide a basis to differentiate them).

Wingster alleges that the insurance agreements here were between the insurers and either Cyr or the City. ECF No. 25 ¶¶ 13–14, 18, 20.[3] Wingster's argument that he was a third-party beneficiary of these agreements is not supported by any factual allegations in the complaint. "[T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the *intent of the parties to the contract* was that the promisor should assume a direct obligation to the third party [beneficiary]." *Grigerik v. Sharpe*, 247 Conn. 293, 311–12 (1998). But "the fact that a person is a foreseeable beneficiary of a contract is not sufficient for him to claim rights as a third party beneficiary." *Id.* at 317–18. The complaint alleges no facts from which I could infer that the agreements showed an intent that the insurers should assume a direct obligation to a victim of the tortious acts of Cyr, their insured. Indeed, the complaint alleges no facts of at all about the content of the two insurance policies. At most, the facts alleged demonstrate that Wingster was a foreseeable beneficiary of the policies. To make every victim of

---

[3] I read Paragraph 20 as referring to Liberty Mutual, despite an apparent omission of the defendant's name.

an insured tortfeasor a third-party beneficiary of the insured's policy would add language to the policy that may not reflect the intent of the parties to the policy.  Further, because it would saddle commercial insurers with obligations to third parties who had provided no consideration in return, it is not a reasonable inference to draw from the mere presence of an insurance policy and would not present a plausible claim absent specific factual allegations about policy provisions showing an intent to benefit a third party.  And recognizing such an obligation would arguably "interfere with the insurer's ability to act primarily for the benefit of its insured."  *See Hipsky v. Allstate Ins. Co.,* 304 F. Supp. 2d 284 (D. Conn. 2004) (quoting *Macomber*, 261 Conn. at 642).  Moreover, this theory, in permitting third-party claimants to bring claims against insurers at any time, would render unnecessary Connecticut General Statutes § 38a-321, which permits a third-party tort victim to subrogate to the rights of an insured and to file a "direct action" against the insurer after the victim wins a judgment against the insured.  *See Carford*, 94 Conn. App. at 46 & n.6 (2006); *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011) ("Courts should not render statutes nugatory through construction.").  Wingster, therefore, cannot bring bad faith claims against the insurer defendants in this case.  *Tomlinson v. Board of Educ.,* 226 Conn. 704, 718 (1993) ("[O]ne who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract . . . ."); *Macomber*, 261 Conn. at 638 ("[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.").

For these reasons, Counts One, Two, and Three are DISMISSED.  And because the same analysis applies to Wingster's bad faith denial of insurance claim against Cyr, and because Cyr is

not an insurer, I also DISMISS Count Four *sua sponte*.[4] Although Wingster requests permission to amend his complaint to add additional facts, I find that further amendment on these claims would be futile because there is no suggestion that he could plead facts that would make it plausible that Wingster was a party or intended beneficiary of the insurance policies.

Because Wingster has recovered a judgment in the Underlying Action, however, it appears that he may be able to plead a claim under the direct action statute, Conn. Gen. Stat. § 38a-321. It is unclear why his attorney does not mention that statute in the complaint, and it is clear that counsel intended to assert solely common-law claims against the insurers. *See* ECF No. 25 at 4, 6, 7 (listing titles of first three causes of action). Because no deadline to amend the pleadings was ever set in this case, and because leave to amend must be "freely give[n]," Fed. R. Civ. P. 15(a)(2), however, I will permit Wingster to amend his complaint to bring a direct action claim under Connecticut General Statutes § 38a-321. Wingster must file any amended complaint pleading this claim on or before **October 15, 2025**. To be clear, Wingster is not permitted to replead the causes of action in Counts One through Four.

### B. Vexatious Litigation

In Count Five, Wingster alleges that CIRMA, Liberty, and the City violated Connecticut General Statutes § 52-568 by "assert[ing] a defense to Plaintiff's civil action for damages either (1) without probable cause or (2) without probable cause, and with a malicious intent unjustly to vex and trouble Plaintiff."[5] But these Defendants have not yet filed an answer or asserted any

---

[4] Dismissal of the claim against Cyr is conditional upon Cyr's amending his Answer. In Paragraph 27 of his Answer, Cyr fails to admit or deny the claim but repeats the claim in the complaint that "Defendant Cyr has failed and refused in bad faith to pay the judgment to Plaintiff." While this response could be read as an admission, because it is inconsistent with Cyr's other denials and is most likely an oversight, the Court will permit Cyr to amend Paragraph 27 of his Answer to the Third Amended Complaint on or before **October 1, 2025**.

[5] Connecticut General Statutes § 52-568 provides in full:

affirmative defenses in this case, and Wingster identifies no other case in which they have done so.[6]  Even if this claim refers to the Defendants' "fail[ure] or refus[al]" to pay the judgment in the Underlying Action, *see* ECF No. 25 ¶ 15; ECF No. 50 at 13–14 (arguing that vexatious litigation claims may be based on a party's conduct in the "continuation" of a civil proceeding), and even if that would be enough to satisfy the statutory requirement of the assertion of a defense, the claim still fails.  As explained above, Wingster has never brought a "direct action" under Section 38a-321, and as such, the liability of CIRMA or Liberty for the judgment has never been established.  With regard to the City, as noted, Wingster fails to identify any prior litigation to which the City was a party in which it asserted any defense or otherwise vexatiously "continued" the action.  In plain terms, the complaint alleges that Wingster has told the Defendants to pay up and the Defendants have asked, "On what authority?"  Wingster cannot answer the question until he files a direct action claim.

For these reasons, Count Five is DISMISSED with prejudice.

### C. Municipal Liability

Finally, Wingster contends that the City has violated Connecticut General Statutes § 7-465 by failing to indemnify Cyr, its employee, for conduct that the court in the Underlying Action

---

> Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages.

[6] To the extent Wingster alleges that any defense the defendants *might* bring in this case would be in bad faith, I reject this claim both as premature and as moot because Wingster fails to state a claim as to any count in the complaint.  To the extent Wingster alleges that the defendants asserted a bad-faith defense on behalf of Cyr during the pendency of the Underlying Action, I reject this claim because neither the insurers nor the City was a party in the Underlying Action and Wingster cites no authority suggesting that Section 52-568 applies to non-parties; Wingster also fails to identify any asserted defense.

determined was done under color of state law.  ECF No. 24 at 8–9.  The statute provides:

> No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly unless such action is commenced within two years after the cause of action therefor arose and written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued.

Conn. Gen. Stat. § 7-465(a).  The parties dispute when the cause of action "accrued," but the answer is immaterial at this stage because Wingster has not alleged that he ever filed written notice with the City's clerk.  *Fraser v. Henninger*, 173 Conn. 52, 56, 376 A.2d 406, 409 (1977) ("When a plaintiff seeks to take advantage of the statute, the liability of the municipality . . . is dependent upon the giving of proper statutory notice."); *Binkoski v. Spaulding*, No. CV126026967S, 2013 WL 7150059, at *2–3 (Conn. Super. Ct. Jan. 14, 2013) ("In order to satisfy the elements of [a § 7-465] claim, the plaintiff must plead that . . . he has satisfied the notice requirements of the statutory claim.  . . . Numerous [Connecticut] Superior Court decisions hold that a failure to allege compliance with the notice provisions renders a § 7-465 claim legally insufficient . . . .").

The City has not waived the notice requirement or any other defense to this claim.  In his opposition brief, Wingster appears to argue that the City waived all objections as to liability for the judgment because it procured law enforcement liability insurance.  ECF No. 55 at 3.  But the availability of insurance coverage by itself does not waive an insured's right to defend himself, at least vis-à-vis third parties, and the insurance policy would not relieve Wingster of the statutory requirement of filing notice with the City.  Moreover, even if the City requested that CIRMA provide a defense to Cyr in the Underlying Action, this would show the City was on notice only of Wingster's claims against Cyr in his individual capacity, not that he would also seek damages from the City.  *See* No. 3:20-cv-1087, ECF No. 1 ¶ 4.

Therefore, Count Six is DISMISSED without prejudice.  If the plaintiff chooses to replead

this count in an amended complaint, he must allege that he has satisfied the notice requirements of Section 7-465, including the date that he filed written notice with the Torrington clerk of his intention to commence a claim. I make no findings in this ruling as to the date the claims "accrued" under Section 7-465.

## IV.     CONCLUSION

For the foregoing reasons, the Motions to Dismiss, ECF Nos. 27, 35, and 48, are GRANTED. Counts One, Two, Three, Four (subject to Cyr's filing an amended answer) and Five are dismissed with prejudice. Count Six is dismissed without prejudice.

The Court hereby modifies the scheduling order in this case under Federal Rule of Civil Procedure 16 to set a deadline to amend the pleadings of **October 15, 2025**. Because Wingster has had multiple opportunities to amend his complaint, the Court is unlikely to grant any extensions of this deadline. To be clear, if he chooses to amend his complaint, Wingster may plead a direct action claim under Connecticut General Statutes § 38a-321 and a claim under § 7-465 to the extent warranted by the facts. He may not replead claims for bad faith denial, breach of good faith and fair dealing, or vexatious litigation.

The Court will dismiss Count Four with prejudice, subject to Defendant Cyr's amending his answer as described above.

IT IS SO ORDERED.

                                                /s/
                                    Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       September 24, 2025